**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>    Plaintiff,<br><br>    v.<br><br>**JAMAICO JEDI [1],**<br><br>    Defendant. | CRIM. NO. 18-124 (PG) |

## OPINION AND ORDER

Defendant Jamaico Jedi ("Jedi") filed a motion for severance on September 27, 2018. See Docket No. 28. He argues that the introduction of non-testifying codefendant Rafael Britto-Paulino's ("Britto-Paulino") confession at trial would violate his Sixth Amendment confrontation rights. See Id. at 5. The government opposes Jedi's motion. See Docket No. 31. A summary of the statements in question was submitted to this court for in camera review, pursuant to Rule 14(b) of the Federal Rules of Criminal Procedure. See Docket No. 38. See also Fed. R. Crim. P. 14(b). For the following reasons, Jedi's motion for severance is **GRANTED**.

## I. BACKGROUND

On February 20, 2018, United States Coast Guard ("USCG") agents interdicted a small vessel allegedly smuggling controlled substances into Puerto Rico. See Docket No. 1 at 3-4. Jedi and Britto-Paulino were the only two persons on board that vessel. See Id. On February 28, a grand jury charged both Jedi and Britto-Paulino in the same four-count indictment. See Docket No. 11.

Prior to the return of the indictment, Britto-Paulino made a series of incriminating statements in an interview with USCG agents. See Docket No. 38-1. Those statements amount to a confession and implicate Jedi. See Id. Jedi himself did not make any such statements. See Docket No. 28 at 2.

There is no written or oral recording of the confession per se. See Docket No. 42 at 1. Still, at trial, the government intends to put USCG agents on the stand to give testimony regarding Britto-Paulino's confession. See Id. at 2. Britto-Paulino does not intend to take the stand himself. See Docket No. 28 at 2.

A summary of Britto-Paulino's statements was submitted to this court for in camera review, pursuant to Rule 14(b) of the Federal Rules of Criminal Procedure. See Docket No. 38. See also Fed. R. Crim. P. 14(b). The summary of the statements reveals that Britto-Paulino referred to Jedi at least 27 times, and at least five of those times by name. See Docket No. 38-1.

Jedi filed a motion for severance on September 27. See Docket No. 28. Therein, he argues that the introduction of non-testifying codefendant Britto-Paulino's confession at trial would violate his Sixth Amendment confrontation rights. See Id. at 5. As such, he requests this court to sever Jedi and Britto-Paulino's joint trial. See Id. at 8. The government opposes Jedi's motion. See Docket No. 31.

## II. DISCUSSION

Rule 14 of the Federal Rules of Criminal Procedure provides for the court to order the severance of trials if the joinder of defendants proves prejudicial to a given party. See Fed. R. Crim. P. 14(a). Nevertheless, the rule in this district is clear: "those 'who are indicted together should be tried together.'" United States v. DeLeon, 187 F.3d 60, 63 (1st Cir. 1999) (citing United States v. O'Bryant, 998 F.2d 21, 25 (1st Cir. 1993)).

To overcome the presumption in favor of joinder, a defendant must show "prejudice so pervasive that it would be likely to effect a miscarriage of justice." Id. (citing United States v. Pierro, 32 F.3d 611, 615 (1st Cir. 1994)). "This requirement means more than establishing that the defendant might have had a better chance of acquittal in a separate trial." Id. (citing Zafiro v. United States, 506 U.S. 534, 540 (1993)).

Courts should order severance only when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539. "Bruton problems" – explained at length below– fall squarely into the first category of circumstances warranting severance. See 1A CHARLES ALAN WRIGHT & ANDREW D. LEIPOLD, FEDERAL PRACTICE AND PROCEDURE § 224 (4th ed. 2008).

### A. The Bruton Diagnosis

The Sixth Amendment's Confrontation Clause guarantees criminal defendants the right to confront their accusers. See U.S. Const. amend. VI. Thus, the Confrontation Clause secures for criminal defendants the opportunity to cross-examine those who bear testimony against them. See United States v. Celestin, 612 F.3d 14, 19 (1st Cir. 2010) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986)). As such, "testimonial statements may not be admitted as evidence of a defendant's guilt unless the declarant can be cross-examined on the witness stand at trial or, if the declarant is unavailable, the defendant had a prior opportunity for cross-examination." United States v. Figueroa-Cartagena, 612 F.3d 69, 84 (1st Cir. 2010) (internal quotations omitted) (citing Melendez-Diaz v. Massachusetts, 557 U.S. 305, 309 (2009); Whorton v. Bockting, 549 U.S. 406, 413 (2007)).

When a non-testifying defendant's confession directly incriminates a codefendant, the government's use of that confession at joint trial ordinarily violates the Confrontation Clause. See Bruton v. United States, 391 U.S. 123, 137 (1968). This is so because, while such a confession would certainly be admissible against the defendant who made it, the same would generally be inadmissible hearsay against a codefendant. See generally Id. at 128.

In Bruton, codefendants Evans and Bruton were charged with armed robbery and tried together. See Id. at 124. Before trial, Evans confessed that both he and Bruton had committed the robbery. See Id. At trial, Evans' confession was admitted in its entirety, but he did not take the stand – meaning Bruton had no opportunity to cross-examine Evans. See Id. The district court instructed

the jury to disregard Evan's confession as evidence of Bruton's guilt. See Id. Such instructions were meant to prevent Bruton from suffering undue prejudice. See Id. The Supreme Court, however, reversed Bruton's conviction, finding that the constitutional violation persists even when the jury is instructed to ignore the confession as evidence against the second defendant. See Id. at 137. ("… in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination.").

"Assessing a claimed Bruton [problem] entails a fact- and context-specific inquiry." United States v. Martinez, 640 F. App'x 18, 28 (1st Cir.), cert. denied sub nom. Rosario v. United States, 137 S. Ct. 244, 196 L. Ed. 2d 186 (2016), and cert. denied, 137 S. Ct. 409, 196 L. Ed. 2d 318 (2016) (citing United States v. Vega Molina, 407 F.3d 511, 520 (1st Cir. 2005)). A "Bruton problem" requires, (1) an out-of-court testimonial statement (2) that clearly incriminates the codefendant, (3) that the incriminating nature be apparent from the statement itself, (3) that the statement not be somehow otherwise admissible against the codefendant and (4) that the codefendant be deprived of the opportunity for cross-examination. See WRIGHT & LEIPOLD, supra, § 224.

After careful in camera review of the summary of Britto-Paulino's statements, the court finds they tick all the "Bruton problem" boxes. Britto-Paulino's out-of-court testimonial statements clearly and directly incriminate Jedi. The incriminating nature of the statements is apparent from the statements themselves. In fact, in the summary of Britto-Paulino's statements provided to the court, Jedi is referenced by name at least five times in an incriminating manner. To boot, the government does not raise, and the court cannot dream up, alternate ways in which the statements would be otherwise admissible against Jedi. Finally, Britto-Paulino does not plan on taking the stand, thus denying Jedi the opportunity for cross-examination in contravention of his Constitutional confrontation rights.

As such, the Court is without a doubt that the present case is plagued by a "Bruton problem." However, the relevant inquiry is not yet at its end. As detailed below, the initial finding of a "Bruton problem" does not automatically lead to severance.

### B. Mending the Bruton Problem

Over two decades after its landmark decision in Bruton, the Supreme Court found that the admission of a non-testifying codefendant's out-of-court confession does not carry a constitutional violation if the court admits it "with a proper limiting instruction…" and the "the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." Richardson v. Marsh, 481 U.S. 200, 211 (1987). A sanitized version of a confession does not raise Confrontation Clause concerns even if it implicates the codefendant when coupled with other trial evidence. See Id. at 208. Thus, the court's decision now hinges on determining whether Britto-Paulino's statement can be sanitized in accordance with Richardson.

Such a task must adapt to the contours of each case, see Vega Molina, 407 F.3d at 521, and:

> the process can be more complicated than it sounds. Sometimes removing references to the other defendants will make the statement incoherent, other times it can create the false impression that defendant acted alone. To combat these problems courts have tried replacing the name of the other defendant with a letter or symbol ("'Z' and I robbed the store"), indicating that another person was involved but not implicating the defendant by name. Even this procedure has risks, as it may still highlight the fact that another person was involved, and the context can make it obvious that codefendant is that person.

WRIGHT & LEIPOLD, supra, § 224. Indeed, in Gray, the Supreme Court cautioned that some statements "despite redaction, obviously refer directly to someone, often obviously the defendant" and "involve inferences that a jury could make immediately…" Gray v. Maryland, 523 U.S. 185, 196 (1998). While some cases involve numerous defendants, such that it cannot be inferred that a neutral symbol or pronoun refers to a particular defendant, "[a] different case may involve so few defendants that the statement leaves little doubt in the listener's mind about the identity of 'another person.'" Vega Molina, 407 F.3d at 520. The case at hand aligns with the latter distinction.

Only two defendants, Jedi and Britto-Paulino, are charged in the above-captioned case. After careful in camera review of Britto-Paulino's statements, the court finds that Jedi's participation in the incriminating acts is heavily ingrained in Britto-Paulino's statements. Redacting references to Jedi in accordance with Richardson thus proves challenging to the point of impracticality. Even if all references to Jedi are neutralized, a jury could still reasonably infer that Jedi is the second person the statements refer to. See Gray, 523 U.S. at 196; Vega Molina, 407 F.3d at 520. Deleting all mention of a second person would produce equally incongruous results: the jury would be led to believe that Britto-Paulino acted alone.

What more, the risk of undue prejudice is heightened given that the government intends to introduce Britto-Paulino's statements through the testimony of the USCG agent who interviewed him. See Bruton, 391 U.S. at 134 n.10 ("To expect a witness to relate X's confession without including any of its references to Y is to ignore human frailty. Again, it is unlikely that an intentional or accidental slip by the witness could be remedied by instructions to disregard.") See also James B. Haddad, Post-Bruton Developments: A Reconsideration of the Confrontation Rationale and a Proposal for a Due Process Evaluation of Limiting Instructions, 10 Am. Crim. L. Rev. 1, 4 n.9 (1980) ("Particularly when the statement is oral, a witness is likely to 'slip' and refer to codefendant's accusations against the defendant."). To boot, stifling parts of the USCG agent's testimony to address Bruton concerns could effectively jeopardize the testimony's probative value. See Haddad, Post-Bruton Developments, supra, at 4 n.9 ("Editing may destroy the statement's evidentiary value against the declarant by eliminating important details or raising questions about the credibility of the officer who took the statement...").

The Court accordingly finds that the introduction at trial of Britto-Paulino's confession poses a "Bruton problem" that cannot be saved by redacting references to Jedi in accordance with Richardson. As such, trying Jedi and Britto-Paulino together would very likely "compromise a specific trial right of one of the defendants ..." Zafiro, 506 U.S. at 539. Thus, Jedi has met the

standard required for the severance of a joint trial. See DeLeon, 187 F.3d at 63 (citing Pierro, 32 F.3d at 615).

What more, Jedi's constitutional rights outweigh economic and efficiency considerations in this case. The court thus finds that impaneling two juries, as the government alternatively requests, would not "comport with the ethos of due process commanded by our stringent rules of criminal justice." United States v. Lewis, 716 F.2d 16, 19 (D.C. Cir. 1983).

### III. CONCLUSION

For the reasons stated above, the court finds that the admission of Britto-Paulino's confession at trial would violate Jedi's constitutional confrontation rights. As such, in order to protect Jedi's specific trial rights, his motion for severance is **GRANTED**. Jedi and Britto-Paulino's joint trial is thus **SEVERED.**

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, October 18, 2018.

S/ JUAN M. PÉREZ-GIMÉNEZ
**JUAN M. PÉREZ-GIMÉNEZ**
**SENIOR U.S. DISTRICT JUDGE**